UNITED STATES, Appellee,

v.

James E. HENDERSON, Specialist Five, U. S. Army, Appellant.

No. 30,512.

U. S. Court of Military Appeals.

May 21, 1976.

Captain Barry J. Wendt argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel James Kucera*, and *Captain John R. Osgood*.

*Captain Richard A. Gallivan* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner, Major John T. Sherwood, Jr.,* and *Captain Gary F. Thorne*.

### OPINION OF THE COURT

FERGUSON, Senior Judge:

On June 27, 1973, the appellant's trial by general court-martial began upon charges of conspiring with Stephanie Wasson, Clarence Wallace, and Specialist Five Herbert J. Bell, to murder Private First Class Sidney Wasson, and of murdering with premeditation Private First Class Sidney Wasson at Koza City, Okinawa, by means of stabbing him with a knife, in violation of Articles 81 and 118, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 918. Upon conviction of both crimes, the appellant was sentenced to a dishonorable discharge, confinement at hard labor for the rest of his natural life, and related penalties. The convening authority reduced the period of confinement to 25 years. Otherwise, the findings and sentence have been approved at all levels below.

After a painstaking review of the complete record in this case, we are compelled to hold that, because the Government has failed to sustain its heavy burden of rebutting the presumption of denial of speedy trial of the appellant,[1] which presumption arose out of the appellant's pretrial incarceration for a period of 132 days, the charges must be dismissed.[2]

The evidence at trial indicated that the appellant conspired to murder, and participated as an aider and abettor in the premeditated murder on February 10, 1973, of Private First Class Sidney Wasson on the Island of Okinawa. The appellant was placed in pretrial confinement on February 15, and charges were sworn and read to him on February 20. On February 28, the Arti-

---

1. *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

2. The remaining issues before the Court either are answered in the opinion or are mooted by our disposition, and discussion of them is not otherwise warranted on this occasion.

cle 32[3] officer was appointed; he completed his investigation on April 27. The staff judge advocate received the complete file on May 3, but he did not submit his 12-page pretrial advice[4] to the convening authority until 1 month later, on June 1. On that same day, the convening authority referred the case to trial by general court-martial. As earlier mentioned, trial commenced on June 27, whereat trial defense counsel unsuccessfully moved for dismissal of all charges upon the ground of denial of the appellant's right to a speedy trial.

■ The appellant remained in pretrial confinement throughout this period, a total of 132 days. Only two intervals of time arguably are attributable to the defense. They comprise spans of 8 and 11 days. For purposes of this appeal, we shall assume that both periods were fully the responsibility of the defense, which leaves the Government accountable for 113 days of the pretrial delay during which the appellant was incarcerated. As such period exceeds 90 days,[5] there exists here a presumption of an Article 10[6] violation, which may be rebutted only if the Government succeeds in shouldering its heavy burden to show diligence.[7]

■ This Court, in fashioning the standard first announced in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), did so recognizing the various pretrial procedural stages through which a criminal case must advance in the military before reaching the courtroom for trial. As such, the standard contemplates and provides for the normal delays which might be expected during this process occasioned, among other causes, by personnel shortages, docketing conditions, and leave of counsel.

Therefore, when a presumption of an Article 10 violation arises, to rebut the presumption it is incumbent upon the Government to show *extraordinary* reasons for not complying therewith. We had occasion to discuss this matter in *United States v. Marshall,* 22 U.S.C.M.A. 431, 434, 47 C.M.R. 409, 412 (1973):

> [T]he point of the *Burton* ruling . . . was to establish a standard that included allowances for the several necessary pretrial stages through which a proceeding must progress. Under *Burton,* the Government may still show diligence, despite pretrial confinement of more than 3 months, in such cases as those involving problems found in a war zone or in a foreign country, *United States v. Prater,* 20 U.S.C.M.A. 339, 43 C.M.R. 179 (1971); *United States v. Mladjen,* 19 U.S.C.M.A. 159, 41 C.M.R. 159 (1969), or those involving serious or complex offenses in which due care requires more than a normal time in marshaling the evidence, or those in which for reasons beyond the control of the prosecution the processing was unnecessarily delayed.

■ Relying upon this language in *Marshall,* the Government on appeal has urged that the trial counsel adequately carried his heavy burden by showing two unusual factors which justified delay: (1) "the serious and complex nature of the offense" and (2) "a generally active prosecution of the case and those additional delays occasioned by the situs of the proceedings in a foreign country." While both factors are, indeed, "extraordinary" and may in a proper case justify non-compliance with the *Burton* standard, factually they are not supported in the present record of trial as causes of unusual delay.[8]

---

3. Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832.

4. Article 34, UCMJ, 10 U.S.C. § 834.

5. *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974), modifying the 3-month period enunciated in *United States v. Burton, supra.*

6. Article 10, UCMJ, 10 U.S.C. § 810.

7. *United States v. Burton, supra* at 118, 44 C.M.R. at 172.

8. Appellate government counsel have attempted to explain the apparent insufficient factual development at trial to support its appellate position by noting for us that *Marshall* was not decided until after the present court-martial. However, *Marshall* decided nothing new, and neither expanded nor limited the *Burton* test. Our reading of the transcript proceedings clear-

## THE NATURE OF THE OFFENSE

■ The offenses with which the appellant was charged most certainly are serious—no more serious crime against the person is recognized in our law than premeditated murder. However, the relative seriousness of an offense is not, we conclude, a rational basis upon which to measure whether an extraordinary circumstance exists as to excuse departure from *Burton*. It may not be controverted that under the facts of any given case, a short absence without leave may be substantially more difficult to prove than a premeditated murder, resulting in the former necessarily demanding more time and effort in which to gather and sift through the evidence than the latter. Surely, in such instances, the mere fact that the murder is a more serious crime than the AWOL would not substantiate taking a longer period of time in the former than in the latter in which to "[marshal] the evidence." The Government correctly notes that this Court in the quoted passage in *Marshall* did say that a "serious *or* complex" [emphasis added] offense might cause extraordinary problems, but at the end of that opinion the "serious" aspect of that paragraph was dropped: [9]

At the risk of redundancy we iterate that when a *Burton* violation has been raised by the defense, the Government must demonstrate that really extraordinary circumstances beyond such normal problems as mistakes in drafting, manpower shortages, illnesses, and leave contributed to the delay. Operational demands, a combat environment, or a convoluted offense are examples that might justify a departure from the norm.

At any rate, we no longer perpetuate any possible notion that the earlier-quoted portion of the *Marshall* opinion may have conveyed, that the involvement of a "serious" offense may itself constitute an extraordinary factor under *Burton*.

Nonetheless, the Government further submits that the offenses herein of concern also are "complex." However, merely the conclusion that charges are complex does not alone cause the case to fall within the *Marshall* language as excepting the prosecution from meeting its obligation under *Burton*. See *United States v. Stevenson,* 22 U.S.C.M.A. 454, 455, 47 C.M.R. 495, 496 (1973). Rather, the *facts* in the record must *support* a determination that *because* of the serious or complex nature of the charges, due care *required* more than a normal time to gather the evidence.

■ The first real problem in duly processing the charges against the appellant for trial rests with the Article 32 investigation which, as the Government concedes, occupied "a significant amount of time"—approximately 2 months. Evidence presented at trial reflects the following sequence of events, in relevant part:

| | |
|---|---|
| Feb 28 | Investigation officer appointed. |
| March 4 | Investigation commenced. |
| March 5 | Testimony of co-accused Bell. |
| March 7 | Civilian defense counsel entered case. |
| March 7–15 | Civilian defense counsel unavailable. |
| March 16 | Testimony of Norris, Nevin, Mrs. Wasson, Briggs, and Fuller. |
| March 17–27 | Trial counsel unavailable. |
| March 27 | Deposition of Mrs. Wasson. |
| March 29 | Testimony of Wallace, Sweeney, and Harrington. |
| March 29–April 9 | Delay awaiting opportunity to recall co-accused Bell, who was requested by civilian defense counsel, and for the appellant to take a polygraph examination, again as requested by the defense. |

ly reveals that trial counsel was an able and aggressive trial advocate. We are assured, therefore, that any and all facts which under *Burton* may have justified the excessive delay were known to trial counsel, were urged by him upon the trial bench, and are preserved in the record. Thus, absence in the record of sufficient factual development which would warrant the delay would appear not to be the result of the lack of benefit of our *Marshall* opinion, but rather the lack of such facts in existence.

9. *United States v. Marshall, supra* at 435, 47 C.M.R. at 413.

April 9        Second testimonial appearance of Bell.

April 27       Report of the investigation submitted.

The investigating officer in his report submitted as his reasons for the inordinate delay the unavailability of the civilian defense counsel when he first entered the case, arranging the availability of all counsel, the fact that "[m]any of the witnesses were also in custody and required unusually complex coordination to make them available," and the preparation of the verbatim statements from the witnesses, including corrections and retyping. However, the above chronology does not support the contention that these problems were all that burdensome.

It is true, for instance, that the appellant's newly retained civilian counsel was unavailable for an 8-day period early in the investigation. However, this delay followed on the heels of Bell's first appearance, and there is no reason apparent in the record that transcription of the testimony could not have taken place during that time.

The same is true of the other two lengthy periods of delay, one of which was 10 days in which *trial counsel* was not available: each followed sessions whereat several witnesses had testified, and transcription of the testimony at those sessions could have proceeded. In short, despite the fact that the investigation file ultimately included approximately 140 pages of verbatim testimony and 89 pages of verbatim deposition, ample opportunity existed for most of this material to be transcribed by April 9.[10] Indeed, it is the opinion of this Court that due care required it.

As to the matter of the "complex coordination" involved in obtaining the witnesses, whatever was required it is apparent that the efforts were successful and did not result in delay of the proceedings, for the chronology reflects that immediately after each period of delay caused by some other reason, several witnesses were available and testified. As a matter of fact, the investigating officer himself testified at trial that the only witness with which he possibly had any trouble at all was Bell—presumably referring to the second appearance of that witness.[11] However, as earlier discussed, even that period of time need not have been wasted entirely, for just prior thereto an 89-page deposition of Mrs. Wasson had been taken and three witnesses had testified, transcription of which was necessary and could have proceeded.

As to the period between April 10 and April 27, the investigation officer offered no explanation. The only indication of what occurred during this period is the frank confession of that officer, in response to trial counsel's question whether he had been present during this time to supervise preparation of the record, that he had gone on leave for an unspecified number of days in that interim. Additionally, the report itself simply involved completing a four-page checklist, with little narrative supplement.

Thus, the state of the record before this Court either itself belies the explanations offered for some periods of time during the 2 months in question or offers none at all for others. In answer, then, to the question whether *because* of the complex nature of the offenses *due* care *required* more than the normal amount of time for such an investigation, remembering that the *Burton* standard *contemplates* a reasonable length of time for this pretrial stage, we must respond in the negative. *See United States v. Stevenson, supra.*

---

10. In fact, it appears that some effort was made to transcribe the testimony as the proceedings progressed. While the statements of those who testified on March 29 were signed on an unspecified date in April, those of all the earlier witnesses were signed and dated April 11.

11. Bell's concurrent Article 32 investigation had been suspended while he retained civilian defense counsel and he refused to answer any questions concerning the alleged criminal incident until such time as he had the advice of that counsel.

The second problem area apparent on the face of the record in moving the charges against the appellant to trial is the time spent preparing the pretrial advice to the convening authority. As earlier observed, the report of the Article 32 investigation was complete on April 27, and the staff judge advocate had the entire case file in his office on May 3. Yet, he did not submit his 12-page advice to the convening authority until June 1. This unusual passage of nearly 1 month is unexplained; the report itself does not suggest that it should have taken that long to be prepared; and there has been no contention before us by the Government that the nature of the offenses somehow caused this excessive delay. In fact, despite appellate defense counsel's specific complaint before us regarding this 1-month period, appellate government counsel have chosen not to address the matter. Put another way, even recognizing the sizeable file which the staff judge advocate had to review in preparation of his advice, the record prompts a conclusion that due care did not require nearly a month for the staff judge advocate's consideration of the appellant's case and preparation of a 12-page advice. See *United States v. Toliver*, 23 U.S.C.M.A. 197, 48 C.M.R. 949 (1974).

## THE FOREIGN SITUS OF THE TRIAL

As to the Government's second factor submitted in justification for the prohibited delay, it is equally deficient. "[A] generally active prosecution of the case" is not the standard by which an Article 10 violation under *Burton* is measured. However, we assume that by joining this phrase with that referring to "those additional delays occasioned by the situs of the proceedings in a foreign country," it is the latter consideration upon which the Government actually is relying. Again, however, as with the first factor urged by the Government, the theory is sound but the facts nonsupportive.[12]

The situs of the trial in a foreign country may thereby cause unusual problems to arise which result in additional delay beyond the norm, *United States v. Marshall, supra,* but that is not necessarily the case. Again, the inquiry must be whether the Government successfully carried its heavy burden of identifying these additional problems, if any there were, caused by the location of the court-martial in a foreign country. *See United States v. Stevenson, supra.* In this case, there is no hint in the record that there was any question as to which country would exercise jurisdiction over the appellant.[13] And the fact that the Okinawan police simultaneously were conducting their own independent investigation of the incident preparatory to prosecuting Mr. Wallace, a "passport civilian" over whom they had jurisdiction, may have required a close coordination and cooperation between the United States and the Okinawan officers, but there was no factual showing that this in any way impeded the progress of the military prosecution of the appellant.

One further comment needs to be made. The standard propounded in *United States v. Burton, supra,* is the law. It will not be ignored by this Court, and it must not be ignored by the trial and intermediate appellate benches. Where the Government fails to comport its conduct with the law, it is

---

12. There is no "foreign country exception" to the *Burton* standard, as the Government in its brief in this case has frequently referred to our language in *Marshall.*

13. Article XVII, Agreement Under Article VI of the Treaty of Mutual Cooperation and Security with Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan, January 19, 1960, [1960] 2 UST 1749, TIAS 4510, provides that there is concurrent *jurisdiction* over an American serviceman who commits an offense against another American serviceman, with primary jurisdiction in the United States. This means that United States authorities will try such a case unless they affirmatively relinquish jurisdiction over it. From an examination of the record and the treaties involved, we are left with the conclusion that from the very beginning of the investigation, both military and Okinawan authorities assumed that the appellant would be tried by American court-martial. Hence, under these circumstances the 90-day period began to run on the date the appellant was placed in pretrial confinement pending trial by court-martial.

the Government which must satisfactorily explain that failure. This Court takes the record in the posture in which it is made by the Government. This is not a case in which it is pleasant to be faced with the necessity to dismiss the charges against the appellant. Those who would participate in a murder-for-hire scheme are most despicable creatures. But ours is a government of law not men, and this is such a court. The law cannot be ignored because in a given case it is distasteful to apply it, for even more important than the demand that convicted criminals are to be duly punished, is the absolute imperative that the law is fairly and equally applied to all. A change in the law must be born out of conscience, not out of convenience.

The decision of the United States Army Court of Military Review is reversed. The findings and the sentence are set aside. The charges are dismissed.

Judge COOK concurs.

FLETCHER, Chief Judge (dissenting):

As acknowledged by the majority, *Marshall*[1] made clear that "the Government may still show diligence, despite pretrial confinement of more than 3 months, in such cases as those involving problems found in a war zone or in a foreign country . . . or those involving serious or complex offenses in which due care requires more than a normal time in marshaling the evidence, or those in which for reasons beyond the control of the prosecution the processing was unnecessarily delayed." Despite the existence of all three of the exceptional factors enumerated in *Marshall,* the majority nevertheless has concluded that the *Burton*[2] rule was violated in the present case. I respectfully dissent.

The offenses charged involved not only premeditated murder but also a conspiracy by four individuals to commit that offense. In addition to being serious, the offenses necessarily were also complex by virtue of the conspiratorial scheme which contemplated the hiring of a "hit-man" and the actual development of a plan to murder the victim, who was the husband of the accused's paramour and co-conspirator.

Because the offenses occurred in Okinawa and because two of the co-conspirators were civilians, much of the evidence was developed and processed by the Okinawan authorities. This, in and of itself, necessitated substantial coordination with foreign law enforcement personnel. In fact, of the 36 witnesses eventually called by the prosecution to testify at trial, nearly half were Okinawan nationals, many of whom did not speak English. Adding to this the fact that the victim's wife (one of the alleged co-conspirators) was attempting to leave Okinawa, which necessitated the preparation of an 88-page deposition, and the fact that another co-conspirator was being tried by Okinawan authorities, further complicating the investigative process, I simply cannot accept the majority's reasoning that the foreign situs of the crimes did not significantly hinder the investigative effort by military authorities.

The majority dismisses the investigating officer's statement that "many of the witnesses were also in custody and required unusually complex coordination to make them available" by noting that "these problems were [not] all that burdensome." Yet, the Court's conclusion is refuted by the very nature of the offenses and the foreign situs of the witnesses and participants. Even the majority apparently is willing to sanction a period in excess of 5 weeks to conduct the Article 32 investigation which consisted of numerous sessions during which over 140 pages of verbatim testimony were taken from nine witnesses in addition to over 50 pages of other statements and exhibits. But surely, *Burton* and *Marshall* did not contemplate a 5-week Article 32 investigation as the norm.[3]

1. *United States v. Marshall,* 22 U.S.C.M.A. 431, 434, 47 C.M.R. 409, 412 (1973).

2. *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

3. Article 33, Uniform Code of Military Justice,

To paraphrase *Marshall,* the complexity of this case required more than a "normal time" to marshal the evidence. As a result, I conclude that the prosecution sufficiently rebutted the presumed Article 10 violation which arose as a result of the accused's confinement for over 90 days. While there were brief periods of inactivity occasioned by the heavy caseload of the prosecutor, a circumstance which ordinarily would not excuse a *Burton* violation, the major reasons for the delay in bringing the accused to trial were the extreme complexity of the case and the difficulties inherent in coordinating the investigation and prosecution with foreign authorities.[4] The majority's rationale makes the *Burton* rule all but insurmountable. I am unwilling to take that step.

In view of the majority's disposition of the speedy trial question, no further discussion of the remaining granted issues is warranted.

**UNITED STATES, Appellee,**

v.

**Alfred B. W. FLINT, Specialist Four, U. S. Army, Appellant.**

**No. 30,915.**

U. S. Court of Military Appeals.

June 4, 1976.

---

---

*Susan H. Hewman, Esquire,* argued the cause for Appellant, Accused. With her on the brief were *Joseph Remcho, Esquire, Arpiar G. Saunders, Esquire, David F. Addlestone, Esquire, Colonel Alton H. Harvey, Captain Sammy S. Knight,* and *Captain J. D. Miller.*

*Captain Lee D. Schinasi* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr.,* and *Captain William C. Kirk.*

---

10 U.S.C. § 833, sets the norm at 8 days. *See United States v. Marshall, supra* at 434, 47 C.M.R. at 412. *See also United States v. Mason,* 21 U.S.C.M.A. 389, 45 C.M.R. 163 (1972).

4. *See* Thorne, *The Continuing Problems in Case Processing,* The Army Lawyer 6 (April 1976).