UNITED STATES, Appellee,

v.

Muriel L. COLE, Private, U. S. Army, Appellant.

No. 31,880,
CM 433335.

United States Court of Military Appeals.

July 18, 1977.

*Captain Robert D. Jones* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel John R. Thornock,* and *Captain Sammy S. Knight.*

*Captain Russell S. Estey* argued the cause for Appellee, United States. With him on the brief were *Colonel Thomas H. Davis, Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Major Steven M. Werner,* and *Captain Lee D. Schinasi.*

Opinion of the Court

PERRY, Judge:

The appellant was convicted of murder and of sodomy, in contravention of Articles 118 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 925, respectively. He was sentenced to dishonorable discharge, confinement at hard labor for life, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, except he reduced the confinement to twenty years. The Court of Military Review affirmed the approved sentence. The evidence of record indicates that on the night of November 21, 1974, the appellant and three co-accused, all members of an Advanced Individual Training (AIT) class at Fort Sill, Oklahoma, that had graduated earlier that day, committed acts of forcible sodomy on a fellow soldier. During this activity, one of the appellant's co-actors, apparently in an effort to stifle the protestations and threats of reprisal emanating from the victim, stuffed some paper in the victim's mouth and the appellant placed his hand over the victim's mouth and nose. The tragic but predictable result was suffocation. The body was placed in a large, enclosed reading-desk/cabinet, where it was found on November 24 in a state of partial decomposition. Meanwhile, all members of that AIT class had departed Fort Sill for their respective permanent duty stations throughout the continental United States,

Germany, Hawaii, and Korea. On November 26, the appellant was arrested and confined at Fort Knox, Kentucky, as a suspect in these crimes.

Before this Court, the appellant renews his claim that the delay of 100 days between the date upon which he initially was confined and the date of his trial constitutes a denial of his right to a speedy trial[1] and demands as his remedy therefor dismissal of the charges, citing *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). The Government maintains that the *Burton* presumption[2] does not obtain here, for on February 20, 1975, the appellant's trial defense counsel moved the military judge for a continuance in the proceedings until March 6, the ultimate date of trial, resulting in what the Government perceives as enough "defense requested delay" to bring the total number of days attributable to the prosecution below 90. Alternatively, the Government urges that the extraordinary circumstances involved in this case justify the deviation from the 90-day norm espoused in *Burton*. We hold that under the facts of this case the Government was responsible for the time period critical to its initial position mentioned above and that the *Burton* presumption, therefore, must be applied. However, we agree with the Government that it has met its heavy burden of proving diligence required by *Burton*.

## I

The following detailed chronology sets out thoroughly all pertinent activities and developments in the processing of the appellant's case for trial on March 6:

| | |
|---|---|
| November 21, 1974 | The murder and sodomy herein involved occurred in the evening at Fort Sill, Oklahoma. The AIT class had graduated earlier that day. |
| November 24 | The victim's partially decomposed body was found. |
| November 26 | The appellant was arrested by Fort Knox, Kentucky, agents of the Criminal Investigation Division (CID), and confined. |
| November 27 | The victim's body was received by the office of the Chief Medical Examiner, Oklahoma City, Oklahoma. |
| November 29 | Appellant was transferred to Fort Sill. Appellant was confined on order of Captain Jong, his battery commander. |
| November 30 | Appellant executed a written statement/confession to CID agents. |
| November 30– December 1 | Weekend; no additional work apparently was done on the case. |
| December 2 & 3 | Captain Jong conferred with CID agents to get witness statements and with the staff judge advocate's office for assistance in drafting charges. |
| December 4 | Captain Jong received the requested sworn statements from the CID. Captain Jong preferred charges against the appellant and 3 co-accused. Charges were forwarded to and received by the summary court-martial jurisdiction (battalion). |
| December 5 | Thirty-two investigation exhibits, many of which consisted of multiple items, were hand-carried by a CID agent to Fort Gordon, Georgia, for lab analysis. |
| December 5 & 6 | A battalion-wide annual general inspection was conducted. |
| December 7 & 8 | Weekend. |
| December 9 | Charges were forwarded to the special court-martial jurisdiction (Field Artillery School Brigade). An Article 32 [10 U.S.C. § 832] investigating officer was appointed by the special court-martial convening authority. The Article 32 officer was Major Eggers, whose principal du- |

---

1. Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810.

2. This Court in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), held that for offenses committed after the date of that opinion, "in the absence of defense request for a continuance, a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months." In such event there will be "a heavy burden on the Government to show diligence, and in the absence of such a showing, the charges should be dismissed." *United States v. Burton, supra* at 118, 44 C.M.R. at 172 (footnote omitted). We subsequently changed the 3-month trigger to 90-days, in the interest of uniformity and stability. *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974).

| | |
|---|---|
| | ties were as a special court-martial military judge with duty station at Fort Sill.[3] |
| December 9– January 7 | Major Eggers organized the case and prepared for a joint Article 32 hearing: |
| December 9– December 13 | Major Eggers studied the case file, including 27 exhibits; visited all 4 accused in the cell block; coordinated the appellant's counsel requests, including his desire for detailed and individually requested military defense counsel, as well as named civilian counsel. CID investigation continued, including a search for witnesses. |
| December 16 | Major Eggers learned that most material witnesses (AIT trainees) had departed Fort Sill and either were on temporary duty (TDY) or on leave pending arrival at new permanent duty stations, mostly in Germany and Korea. Appellant's detailed military defense counsel and defense counsel for a co-accused requested assistance of 2 investigative aides, citing the need arising from this case which they characterized as one of "overwhelming complexity." |
| December 18 | Major Eggers asked the brigade commander for TDY funds to return material witnesses for the investigation. |
| December 20 | Major Eggers was advised that once the witnesses had reported to new duty stations no TDY funds would be available for their return for the Article 32 hearing. Major Eggers tried to get the duty orders cancelled of those witnesses who had not yet arrived at their new station and to have them returned on orders to Fort Sill. To facilitate this, he asked the Criminal Law Division, Office of The Judge Advocate General, to intercede with Military Personnel Center (MILPERCEN). |
| December 20– January 3 | Major Eggers and Captain McNery, who was designated to be trial counsel, made frequent calls to speed up the lab analysis, autopsy, and continued CID investigation. |
| January 2 | Autopsy report was completed. |
| January 3 | Autopsy report was mailed by the civilian medical examiner. Fort Gordon lab report was received at Fort Sill. |

| | |
|---|---|
| January 6 | Autopsy report was found and delivered to Major Eggers. Criminal Law Division, OTJAG called and advised that the witnesses would not be returned for the Article 32 hearing. |
| January 7 | Major Eggers obtained additional witness statements from CID, and he provided the lab report, statements, and written notice of hearings to defense counsel. |
| January 8 | Article 32 hearing. |
| January 9 | Article 32 hearing. Request was made for a statement from CID agent Lacy at Fort Knox. |
| January 10 | Article 32 hearing. |
| January 13 | Major Eggers arranged for more witnesses. Agent Lacy's statement was received. |
| January 14 | Article 32 hearing. |
| January 16 | Article 32 hearing. Major Eggers scheduled the final hearing and arguments for January 21. Appellant's defense counsel indicated he may have additional witness. |
| January 17 | Witnesses signed statements that had been typed. |
| January 21 | Article 32 hearing. No evidence was taken. Defense counsel indicated they may have unsworn statements to present. Requested an additional clarifying statement from Agent Lacy, which Lacy promised by Friday. Final hearing was set for January 27 in order to get the testimony of Private Thomas, at the request of counsel for one of appellant's co-accused. Major Eggers contacted Doctor Chapman and Sergeant Bohanon regarding information to establish time of death. |
| January 22 | Received a statement from Doctor Chapman addressing the time of the victim's death. |
| January 27 | Article 32 hearing. Witnesses Bohanon and Thomas appeared. Three unsworn statements were submitted, one of which was the appellant's. Lacy's statement had not yet been received, but defense counsel assented to concluding the investigation without it. Argument was made by counsel. |

3.  It appears from the record before us that much of the Government's success in this appeal is attributed to the appointment of a judicially trained person to perform the judicial role of Article 32 officer—who knew what was required of him under *Burton,* who strived continually to meet those responsibilities, and who kept a thorough and detailed record of all his activities in the investigation.

January 30 — Major Eggers submitted his Article 32 report to the special court-martial convening authority, which included Exhibits A–E, Folder 1 (containing Exhibits 1–85), and Folder 2 (containing Exhibits T–1—T–21).

February 3 — Special court-martial convening authority forwarded the case file to the staff judge advocate for the general court-martial convening authority.

February 4–11 — Captain McNery prepared the pretrial advices for the cases of the appellant and 2 of his co-accused, all of which were substantially identical:

February 4–6 — Captain McNery engaged in organizing cases for preparation of the pretrial advice and in preparing same.

February 7 — Captain McNery was trial counsel in an unrelated special court-martial (BCD) and he did no work on these cases.

February 8–9 — Weekend; Captain McNery was uncertain at trial whether he had done any work at home on these cases.

February 10 — The summary of the evidence for each advice (which was nearly identical in each case) was put in final form.

February 11 — The 3 advices were completed and forwarded to the general court-martial convening authority.

February 11 — Appellant's case was referred to trial by the general court-martial convening authority.

February 14 — Appellant's case was re-referred to trial as non-capital, pursuant to a new pretrial advice regarding necessity that the referral specify whether trial was to be capital or non-capital.

February 20 — Article 39(a) [10 U.S.C. § 839] session. Detailed defense counsel for the appellant requested a continuance for his client to obtain civilian defense counsel. Trial counsel indicated he would like the earliest possible date. Defense counsel said he preferred March 6, to which date the military judge continued the trial. Prosecution's witnesses began arriving from Korea and Germany.

March 6, 1975 — The appellant pleaded guilty to both charges. Prior thereto, the appellant moved for dismissal of the charges on the basis of denial of his speedy trial. During litigation of this motion, trial counsel acknowledged that on February 20, he had not been ready for trial, as his witnesses just that day or the day after had begun to arrive; he further revealed that as of March 6, some still had not arrived but that he then was ready to proceed nonetheless (as of the date of this hearing, trial counsel stated that 16 of his witnesses had arrived, but that 4 or 5 still were expected). Trial counsel conceded that he would not have been "ready" for trial until March 6 or the day before.

In denying the appellant's motion for dismissal, the military judge made the following specific findings:

First of all, I find that a period of time of at least ten days and perhaps more is attributable to the defense request for delay for the purpose of securing and being represented by civilian counsel. Accordingly, I find the period of time in excess of 90 days not to apply. Nevertheless, I find that even if it did apply the heavy burden set forth in the *Burton* and *Marshall* cases has been satisfied by the prosecution's evidence. It is obvious that this is one of the most serious cases that could come before a court. It is the type of a case which requires careful preparation. It is further obvious that it is not only a serious case but a case made more complicated and more complex by the fact that the alleged offense was not discovered prior to the time that witnesses, many of whom were in a graduating class had been scattered throughout the world, and that one of the major complicating factors in this case was the attempt to secure those witnesses; further, that the case was complicated by the necessity of obtaining what appears to be an unusual amount of evidence of a scientific nature. Accordingly, I find no lack of diligence on the part of the government, and the motion is denied.

## II

As made clear both by the findings of the trial judge and the Government's pleadings herein, the first inquiry is whether the *Burton* presumption applies at all

under the facts of this case. More specifically, the pivotal question is whether the defense or the Government must bear the burden of responsibility for the period of time between the Article 39(a) sessions on February 20 and March 6.[4]

■ The basis of any speedy trial provision, including that enunciated in *United States v. Burton, supra,* is the theory that it is the Government which bears the responsibility of moving a criminal case to a stage of prosecution readiness for trial. Implicit therein is the notion that at least until the Government has reached that stage of readiness, all passages of time normally are its responsibility alone. While it generally is true that "continuances or delays granted only because of a request of the defense and for its convenience are excluded from the 3-month period" of *Burton, United States v. Driver,* 23 U.S.C.M.A. 243, 245, 49 C.M.R. 376, 378 (1974), simply labeling a delay as defense requested does not always end the exercise. *See United States v. Schilf,* 1 M.J. 251 (1976). Rather, sometimes it is necessary to look behind which party physically requested the delay to ascertain to whose benefit the delay in fact accrued. If the Government was not prepared to proceed with the prosecution of the case, and was not adversely affected by the delay in proceeding with its preparation for trial, *see United States v. Henderson,* 1 M.J. 421, 425 (1976), the status of the defense case is irrelevant for purposes of speedy trial, for no "delay" actually resulted from the defense request. After recognizing this proposition generally in *Driver,* the conclusion we expressly reach here was implied in

the inverse holding of this Court in that case:

> Although the Court of Military Review may be correct in holding that not every defense request for delay should be chargeable to accused, this exclusion does not apply when a continuance or delay is granted solely for the convenience and benefit of the accused.

23 U.S.C.M.A. at 245, 49 C.M.R. at 378.

■ While defense-requested delays or continuances generally are attributable to the defense as the party which benefits therefrom, a showing that the prosecution could not have proceeded any earlier at any rate compels the conclusion that the defense-requested "delay" did not in fact *delay* the proceedings at all and the responsibility for the pertinent time period remains where it started: on the shoulders of the Government.[5]

■ In the case of the appellant, it is uncontroverted that the Government was not ready to proceed with trial on February 20. Indeed, trial counsel himself acknowledged during the hearing conducted on March 6 that he was not "ready" for trial until that day or possibly the day before. Under these circumstances and in consideration of the Government's duty to be prepared to proceed when trial begins, there is no rationale for placing the responsibility for the time between February 20 and March 6 anywhere but with the Government. The conclusion is inescapable that the appellant's request for a continuance did not delay the proceedings in any way.

4. Our examination of responsibility for the passage of time must extend beyond February 20, for it is settled that an Article 39(a) session which is "not the functional equivalent of a trial," in that it deals solely with matters other than the appellant's guilt, does not toll the running of the *Burton* period. *See United States v. Beach,* 23 U.S.C.M.A. 480, 482, 50 C.M.R. 560, 562, 1 M.J. 118, 120 (1975) (Cook, J.—dissenting) (the majority in *Beach* had to have concluded likewise, *sub silentio,* to have reached its disposition); *United States v. Marell,* 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974).

5. We believe the United States Army Court of Military Review correctly articulated the exercise to be conducted when the defense disputes the locus of responsibility for delay it requested: (1) Look at the real cause of the request (*i. e.,* did the Government do anything to affirmatively necessitate the request, *see United States v. Beach, supra* ); and (2) Look at the result of the request (did it really "delay" the proceedings in any way). *United States v. Anderson,* 49 C.M.R. 37, 39 (A.C.M.R.1974).

Hence, we determine that the *Burton* presumption applies, as Government-accountable delay while the appellant was in pretrial confinement exceeded 90 days.

## III

█ In the exercise of determining whether, in light of the *Burton* presumption, an accused has been denied his right to a speedy trial guaranteed him by Article 10 of the Code, there is a heavy burden upon the Government to show diligence, else the presumption of the denial carries the day. *United States v. Burton, supra.* Counsel for the appellant has pointed out certain facts of record and has asserted that these facts resulted in delay in the trial of his client and, further, that these facts are insufficient reason for delay beyond the 90 days permitted in normal circumstances. In this regard counsel points to (a) the joint investigation conducted by the Article 32 officer, the nature of which he submits caused it to "degenerate into a complicated and drawn out affair";[6] (b) the requests for delay during the investigation made by defense counsel for two of the appellant's co-accused, as well as leave taken during this time period, again by counsel for two co-accused, which also resulted in an improper delay;[7] (c) the fact that Captain McNery prepared all four pretrial advices concurrently, aggravating the delay for the appellant; (d) the extra time required for a supplemental advice because Captain McNery neglected to advise the convening authority in the original advice that the

appellant's case had to be referred specifically either as capital or non-capital;[8] and (e) the manpower shortage in the staff judge advocate's office caused, among other things, by a half-day work schedule over the Christmas holiday season in the legal section and evidenced in part by the fact that trial counsel in the appellant's court-martial had been "saddled" with the trial of the co-accused, as well as another unrelated case during the period of time in which this case was being processed.[9]

█ However, there is no indication in the record that any or all of these factors *caused any delay.* Indeed, both the testimony of Major Eggers and Captain McNery and the chronology set out earlier in this opinion warrant a contrary conclusion: No significant delay accrued to the appellant because of the existence of any of these matters isolated by the appellant's counsel. In the absence of such a cause/effect relationship between a particular fact and a purported "delay," these occurrences discussed by counsel are of no relevance to deciding the present issue.[10] *See United States v. Henderson, supra; United States v. Stevenson, supra.*

It appears to this Court as it did to the trial judge that most of the "delay" in bringing this case to trial flowed from two features of this case: (1) the unusual circumstances surrounding the need to obtain witnesses, both for the Article 32 hearing and for the expected trial, and (2) what the trial judge called the "unusual amount of evidence of a scientific nature."[11]

6. *See United States v. Johnson,* 1 M.J. 294, 296 n. 7 (1976).

7. *See id.; United States v. Marshall,* 22 U.S.C. M.A. 431, 435, 47 C.M.R. 409, 413 (1973).

8. *See United States v. Marshall, supra* at 435, 47 C.M.R. at 413.

9. *See id.; United States v. Stevenson,* 22 U.S.C. M.A. 454, 47 C.M.R. 495 (1973).

10. The one event cited by appellant's counsel which does appear in fact to have caused some delay is the occasion of a battalion-wide annual general inspection conducted December 5 and

6. Aside from the fact that an AGI of such scope—which counsel characterized as a "routine military inspection"—arguably might constitute an "operational demand" not chargeable under *Burton* to the Government, *see United States v. Marshall, supra,* attribution of that short period to the Government as a do-nothing period is, nevertheless, of no legal consequence in this case.

11. The CID investigation into these crimes continued throughout the Article 32 investigation and regularly developed new evidence which had to be assimilated into the total case picture.

■ In the normal case, obtaining witnesses for either the investigation or the "trial is one of the routine responsibilities" for which this Court made allowance in establishing the 90-day standard. *United States v. Dinkins,* 23 U.S.C.M.A. 582, 50 C.M.R. 847, 1 M.J. 185 (1975). However, in certain unusual cases, locating and acquiring material witnesses may prove truly to be an extraordinary problem. *See United States v. Johnson,* 23 U.S.C.M.A. 91, 48 C.M.R. 599 (1974). Considering the timing of the murder and the secreting of the *corpus delicti* of the offense, together with the timing of the graduation of the training unit of which all material witnesses were members; the far reaches of the world to which most of these witnesses were scattered prior to discovery of the crime; the time between departure from Fort Sill, and arrival at their new units during which these witnesses were in transit and, as a practical matter, unreachable; the difficulty in ascertaining precisely the permanent unit to which most of these witnesses ultimately were sent so that they physically might be contacted; and the unusual problem in arranging their travel back to Fort Sill, we conclude that the identification and gathering of the material witnesses in this case was no routine task, but rather was an undertaking which, utilizing the *Burton* verbalization of the standard, was "extraordinary," and one which we are convinced all persons in authority undertook to accomplish with all possible dispatch.

Similarly, in the ordinary case, awaiting a forensic laboratory report of analysis is a usual investigative incident involved in many criminal cases and is not one which in those instances will excuse noncompliance with the *Burton* standard. *See United States v. Pyburn,* 23 U.S.C.M.A. 179, 48

C.M.R. 795 (1974). But gathering, processing, analyzing, and considering the bulk of physical evidence in the investigation of the case against this appellant was nowhere near as simple as that involved in the normal criminal prosecution, even one in which the offense involved is as serious as in this case. Under these circumstances, the Government was faced with what may fairly be described as an unusual forensic investigation, requiring the efforts of two laboratories, and it was an investigation which was performed and monitored with care and conscientiousness.

■ While the relative seriousness of an offense will not, alone, serve as a justifiable basis for finding extraordinary delay, the complex nature of a given case will do so if the complexity was the proven *cause* of that delay. *United States v. Henderson, supra* at 424. This is such a case,[12] where the complexity of the investigation and preparation for trial, considering all the attendant circumstances, was such that "due care require[d] more than a normal time in marshaling the evidence" against the appellant.[13] *United States v. Marshall, supra* at 434, 47 C.M.R. at 412.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

COOK, Judge (concurring in the result):

I write separately to express my disagreement with the majority's conclusion that the circumstances triggered the presumption of a denial of a speedy trial. *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974); *United States v. Bur-*

---

12. As earlier noted, the appellant's trial defense attorney indicated a similar view when, on December 16, in his request for assistance of an investigative aide, he depicted this case as one of "overwhelming complexity."

13. Appellate defense counsel in his brief implies, though he does not press the point, that most of what preceded the appellant's trial was unnecessary as to his client's case in light of the appellant's execution of what counsel terms

a "full blown written confession" at Fort Sill on November 30. However, as the Article 32 officer observed in his report, the admissibility at trial of that confession was at least suspect for a reason not now material to this case, and therefore the Government cannot legitimately be faulted for proceeding to develop a hard case of independent evidence against the appellant through a full investigation.

*ton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

An Article 39(a)[1] session was conducted on February 20. During this session, military defense counsel requested a continuance for the purpose of obtaining a civilian defense counsel. Trial counsel pressed for the earliest possible trial date, but defense counsel urged a date no earlier than March 6. The hearing was adjourned to that day; and it reconvened as scheduled. Immediately, the defense moved to dismiss the charges because the appellant had allegedly been denied a speedy trial. Trial counsel acknowledged that all of his witnesses had not been available on February 20, the date of the initial Article 39(a) session, but referred to the defense representation that the accused needed time to retain civilian counsel. However, the accused had later decided to proceed without civilian defense counsel.

While conceding that a continuance had been granted on February 20 at his request, appellant nevertheless submits that the resultant delay is still chargeable to the Government. Unlike my brothers, I reject the interpretation of the *Burton-Driver* presumption upon which the appellant's argument is predicated.

The Court's language in *Burton* bears repeating:[2]

> For offenses occurring after the date of this opinion, however, we adopt the suggestion of appellate defense counsel that in the *absence of defense requests for continuance,* a presumption of an Article 10 violation will exist when pretrial confinement exceeds three months. In such cases, this presumption will place a heavy burden on the Government to show

diligence, and in the absence of such a showing the charges should be dismissed.

Appellant concludes from this statement and from *United States v. Driver, supra,* that a defense-requested continuance is not chargeable to the accused unless the Government is at that time actually prepared for trial. The part of *Driver* he relies upon is the following excerpt in which the Court overruled a determination by the Court of Military Review that a delay obtained by the defense was not excludable from the *Burton* computation:[3]

> Although the Court of Military Review may be correct in holding that not every defense request for delay should be chargeable to accused, this exclusion does not apply when a continuance or delay is granted solely for the convenience and benefit of the accused. This determination is confirmed by the opinion in *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). . . . Rather, as set out above, continuances or delays granted only because of a request of the defense and for its convenience are excluded from the 3-month period.

Appellant's reliance on the quoted language is misplaced. The Court did not make excludability of defense-requested delay dependent upon whether the delay was *solely* for its own benefit; the Court's comments merely acknowledged the factual state of the record.[4]

As noted in *Burton,* "defense requests for continuance" are excludable in computing the pretrial confinement chargeable to the Government. The present case involves a legitimate defense request for a continuance, not a mere acquiescence in a trial date

---

1. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a).

2. *United States v. Burton,* 21 U.S.C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971) (emphasis added) (footnote omitted).

3. *United States v. Driver,* 23 U.S.C.M.A. 243, 245, 49 C.M.R. 376, 378 (1974).

4. The language of *Driver* is restated to some extent in *United States v. Johnson,* 1 M.J. 294

(1976), and *United States v. Schilf,* 1 M.J. 251 (1976). However, neither case involved a continuance which was necessitated by the request of the accused. *Schilf* involved a situation where the defense requested a delay as a result of "trickery" by the Government in an attempt to avoid the *Burton* presumption; and the delay in *Johnson* was occasioned by the request from counsel of a co-accused.

selected by the Government. *See United States v. Wolzok,* 23 U.S.C.M.A. 492, 50 C.M.R. 572, 1 M.J. 125 (1975); *United States v. Reitz,* 22 U.S.C.M.A. 584, 48 C.M.R. 178 (1974). In *United States v. Beach,* 23 U.S.C.M.A. 480, 481, 50 C.M.R. 560, 561, 1 M.J. 118, 119 (1975), both the majority and dissenting opinions observed that the Government was not accountable for a part of the delay as to which the defense *shared* the responsibility with the Government. Indeed, the circumstances of the present case clearly reflect that the purpose of the *Burton* presumption (to insure an accused is accorded a speedy trial) would not be served by including the delay requested by the defense in the Government's period of accountability. To so include such period would not only require the Government to incur the expense of obtaining witnesses, but also inconvenience such witnesses for a trial date which the defense affirmatively seeks to avoid.[5] Under such circumstances, the purpose of the *Burton* presumption ceases to exist as the trial did not commence on the scheduled date at the request of the defense. Accordingly, in my opinion, the delay necessitated by the defense request for a continuance was properly excluded from the period of the Government's accountability. Reduced by this period, the time of accountability was only 86 days (November 26, 1974 to February 20, 1975)[6] and the *Burton-Driver* presumption was inapplicable.

Independent of the presumption of prejudice, the record reveals no unreasonable or oppressive delays. I, therefore, conclude the appellant was accorded a speedy trial,[7] and join my brothers in affirming the decision of the United States Army Court of Military Review.

5. As the defense, in fact, requested a continuance in the present case, there was no issue as to whether the Government reasonably relied upon a defense desire that the trial be delayed. However, I caution the Government that where no request for a defense continuance is made at trial, the Government must demonstrate, on the record, that it was not prepared for trial because it relied on a defense position that a delay in the proceeding would benefit the accused.

6. *See United States v. Manalo,* 1 M.J. 452 (1976).

7. In view of my conclusion that there was no presumption of a denial of a speedy trial, I find it unnecessary to address the question of whether the present case involves extraordinary circumstances sufficient to overcome such a presumption.