UNITED STATES, Appellee,

v.

Alfredo H. ROMAN, Private, U. S. Marine Corps, Appellant.

No. 34,357.

NCM No. 74 0296.

U. S. Court of Military Appeals.

Oct. 2, 1978.

Appearances: For appellant—*Commander Carl H. Horst*, JAGC, USN (argued).

For appellee—*Lieutenant Steven D. Moore*, JAGC, USNR (argued); *Lieutenant Commander N. P. DeCarlo*, JAGC, USN (on brief).

Opinion

COOK, Judge:

Appellant was originally convicted of premeditated murder and sentenced to confinement at hard labor for life and accessory penalties. The findings and sentence were approved by the convening authority. In an interim order, dated May 28, 1974, the Navy Court of Military Review held that, although appellant's mental responsibility had been litigated at trial, evidence submitted after conviction warranted a further inquiry into both his mental responsibility at the time of the offense and his capacity to participate in the proceedings. Subsequently, a sanity board concluded appellant was both mentally responsible for the criminal act and possessed sufficient capacity to participate in the proceedings. In an opinion, dated January 26, 1976, the Navy Court of Military Review reversed the conviction on the basis that the Government had improperly denied appellant's request for defense counsel. A rehearing was conducted and, pursuant to his plea of guilty, appellant was convicted of unpremeditated murder and sentenced to confinement at hard labor for 18 years and accessory penalties. The convening authority, pursuant to the terms of a pretrial agreement, reduced the period of confinement to 10 years and his action was approved by the Court of Military Review. We granted review to determine whether the appellant was denied a speedy trial during the original hearing and whether the change in the standard of mental responsibility set forth in *United States*

*v. Frederick*, 3 M.J. 230 (C.M.A.1977), requires a rehearing.

We first address the speedy trial issue which is raised in the following factual context. Private First Class McCrory was murdered on September 22, 1972, and his remains were found on October 4. Appellant was apprehended in Burley, Idaho, on October 13 and was transferred to Treasure Island on the following day. He consulted with counsel, Lieutenant Johnson, on October 18 and departed Treasure Island on October 23 for Subic Bay, Philippines; the situs of the offense was U.S. Naval Air Station, Cubi Point, Philippines. He arrived at Subic Bay on October 25, where he was placed in pretrial confinement. On October 26 charges were preferred; appellant was informed of the charges and an Article 32[1] investigating officer was appointed. Appellant also consulted with Lieutenant Cherneff on that date. The initial session of the Article 32 hearing was convened on November 1, but the government counsel requested a continuance for the purpose of preparing for the hearing. On the same date, the appellant also submitted a request for Lieutenant Johnson[2] as defense counsel.

The pretrial investigation reconvened on November 3, and appellant was informed by the Article 32 investigating officer that his requested counsel would not be available until a later date. Appellant expressed a desire to await the arrival of this counsel and the Government stated that it was ready to proceed. The Article 32 hearing was held on November 20; the report of that hearing was forwarded on November 29. The pretrial advice of the staff judge advocate was completed on December 15 and the charge was referred to trial on December 27.[3] This charge was served on the accused one day later.

The initial Article 39(a)[4] session was conducted on January 8, 1973. At this time the accused made known his request for Lieutenant Johnson as individual military counsel for the trial and Lieutenant Cherneff as assistant "detailed defense counsel." A trial date was set for January 15 or the first week in February. The session was adjourned but was reconvened on January 22, 1973; the trial counsel noted that Lieutenant Johnson would not be available until January 25 and the defense asserted that such counsel would not be available until January 26. Trial counsel further noted that the convening authority had orally denied the appellant's request for Lieutenant Cherneff and that defense counsel had refused to permit appellant's participation in a sanity board evaluation[5] until the Government acted on a defense request to have appellant transferred to the Continental United States for evaluation by a civilian psychiatrist. The Article 39(a) session was adjourned and reconvened on January 29, 1973, with Lieutenant Johnson present. The defense renewed its request for Lieutenant Cherneff and requested seven named witnesses. The military judge granted the request for two, but denied the request as to the remaining five. The defense also moved to have the case tried as non-capital.[6] Both the defense and the Government indicated that they desired additional time to prepare their arguments on the defense motion. The Article 39(a) session terminated and reconvened on January 30, at which time the defense moved for the military judge to direct the convening authority to appoint Lieutenant Cherneff as assistant detailed counsel and to have appellant transferred to Treasure Island for a psychiatric examination by a civilian psy-

---

1. Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832.

2. Lieutenant Johnson was stationed at Treasure Island.

3. Appellant was originally charged with both conspiracy to commit murder and the substantive offense of murder. However, he was tried only for the offense of murder.

4. Article 39(a), UCMJ, 10 U.S.C. § 839(a).

5. *See* paragraph 121, Manual for Courts-Martial, United States, 1969 (Revised edition).

6. The military judge subsequently instructed the court members that the maximum imposable sentence was confinement for life.

chiatrist. Both motions were denied by the military judge, who directed trial counsel to supply a list of qualified psychiatrists located in the Philippines. The hearing was adjourned, but reconvened on February 28 when the trial counsel brought up the possibility of appellant's being examined by a sanity board. The defense renewed its motion to have appellant transferred to the United States for the purpose of a psychiatric evaluation. The military judge again denied the motion and directed that a sanity board be convened on or before March 12 and set a trial date for March 21. The defense submitted an additional request for witnesses, which was denied by the military judge. The Article 39(a) session adjourned and reconvened on March 9, when the defense made an additional motion for two witnesses to testify in extenuation and mitigation. This motion was denied by the military judge. Trial counsel noted the Government's efforts relating to the sanity board and observed that the defense counsel had cancelled a scheduled interview with one of the psychiatrists involved in the sanity board evaluation. The Article 39(a) session was adjourned at this time and reconvened on March 26 when the trial counsel observed that the defense had expressed a desire that appellant be examined by a second civilian psychiatrist. The appellant had previously been examined by a civilian psychiatrist located in the Philippines. The Article 39(a) session was then adjourned and reconvened on March 29, when the accused submitted a motion to dismiss on the basis he had been denied a speedy trial. This motion was denied by the military judge.

Although the speedy trial issue was raised and litigated during the original hearing, it was not raised during the rehearing. Government counsel submit that the failure to raise a speedy trial issue during a rehearing as it relates to an original hearing constitutes a waiver of such issue upon further appellate review. *See United States v. Sloan,* 22 U.S.C.M.A. 587, 48 C.M.R. 211 (1974); *see generally United States v. Flint,* 1 M.J. 428 (C.M.A.1976). However, we need not now resolve that issue as the record before us, which includes the transcript of the original hearing, reflects that appellant was accorded a speedy trial.

In the present case the appellant was in continuous confinement from the date of his apprehension on October 13, 1972, to the date of the speedy trial motion, which was made on March 29, 1973. As the previous Article 39(a) sessions dealt with the preliminary matters, they were not the functional equivalents of a trial for the purpose of assessing the period of pretrial confinement. *United States v. Cole,* 3 M.J. 220, 225 n. 4 (C.M.A.1977); *United States v. Beach,* 1 M.J. 118, 120 (C.M.A.1975) (Cook, J., dissenting). Thus, pretrial confinement extended to 167 days. However, the delay in the Article 32 investigation from November 3 to November 20, 1972, was occasioned by appellant's desire to await the arrival of his requested defense counsel, Lieutenant Johnson.

The initial Article 39(a) session of January 8, 1973, was adjourned until January 15 or the first week of February for the purpose of awaiting the arrival of Lieutenant Johnson. Additional Article 39(a) sessions were held from January 22 to March 29. During this period it became obvious that a sanity board evaluation of the appellant was required before trial on the merits, but the defense refused to allow the appellant to be evaluated until it had obtained a psychiatric examination by a civilian psychiatrist. Indeed, even after the appellant had been examined by a civilian psychiatrist, the defense obtained a second examination by another civilian psychiatrist. The only delay requested by the Government was from January 29 to January 30 for the purpose of preparing argument on the defense motion made on January 29. In any event, absent this delay of one day, the defense continued to avoid a psychiatric examination by a sanity board by insisting that appellant be examined by a civilian psychiatrist. Thus, the present case involves more than the Government's attempt to explain a pretrial delay by the necessity to conduct a sanity board evaluation of the

accused; rather it is a situation where the appellant affirmatively avoided such an evaluation, although the parties were aware that the question of mental responsibility and/or capacity was in issue.

Thus, the entire period of the delay with the exception of one day from January 22, 1973, to March 29, was attributable to the defense (65 days), and we will deduct this delay and the delay in the Article 32 hearing from November 3, 1972, to November 20 (17 days) from the period of the Government's accountability.[7] *United States v. Herron,* 4 M.J. 30 (C.M.A.1977); *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974). Accordingly, the period of the Government's accountability is reduced to 85 days, and there is, therefore, no presumption that appellant was denied a speedy trial. *United States v. Driver, supra; United States v. Burton,* 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971). Absent such a presumption, we find no unreasonable or oppressive delay and hold the appellant was accorded a speedy trial.[8]

■ We turn now to the issue of whether the change in the mental responsibility standard set forth in *United States v. Frederick, supra,* requires a rehearing.[9] As we observed in *Frederick,* the "record must be examined to determine if there is a fair risk of prejudice to the appellant from the use of the rejected standard of mental responsibility." *Id.* at 238. In the present case the issue of mental responsibility was litigated during the original hearing, but it was not raised at the rehearing. During the interim, the Court of Military Review concluded that a post-trial psychiatric examination for appellant was required and such an examination was subsequently conducted. While the pre-*Frederick* standard of mental responsibility was presumably used during the rehearing and the post-trial evaluation, the defense, during the rehearing, concluded that it would not even raise the issue of mental responsibility. Under such circumstances we hold that the modification of the standard set forth in *Frederick* would not have benefited the appellant.

The decision of the United States Navy Court of Military Review is affirmed.

PERRY, Judge (concurring):

I concur. However, consideration of the speedy trial issue here is, in my view, inappropriate because it was not asserted at the trial. It is true that at an earlier trial on the same charge, the appellant unsuccessfully litigated the speedy trial issue which he presents here. But the finding of guilty which flowed from that trial was reversed by the United States Navy Court of Military Review because of an error unrelated to the speedy trial issue, committed by the trial judge. At his new trial, in accordance with a pretrial agreement, the appellant pleaded guilty to the lesser included offense of unpremeditated murder. The Navy Court of Military Review has affirmed.

---

7. Although the Article 39(a) session of January 8, 1973, was continued for the purpose of permitting Lieutenant Johnson to join the defense as counsel, he participated in the Article 39(a) session of January 29, and there is nothing in the record to indicate that his absence delayed the Government's preparation for trial.

8. Our resolution of the issue renders it unnecessary to address the Government's argument that the present case involved extraordinary circumstances which would justify a delay in excess of 90 days. *See United States v. Cole,* 3 M.J. 220 (C.M.A.1977).

9. In *United States v. Frederick,* 3 M.J. 230 (C.M.A.1977), the Court adopted the standard of mental responsibility recommended by the American Law Institute in the Model Penal Code § 4.01, Proposed Official Draft (May 4, 1962), which provides:

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article, the terms "mental disease or defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

*Id.* at 234. Prior to our opinion in *Frederick,* the standard applied at military trials was the *M'Naghten* standard (*M'Naghten's Case,* 10 Cl. & F. 200, 8 Eng.Rep. 718 (H.L.1843)), with the addition of the irresistible impulse test. *See* paragraph 120b, Manual, *supra.*

We granted review of the case as made at the new trial which the Navy Court of Military Review ordered. No petition for review concerning the first trial has been placed before us. Moreover, the appellant did not, at his new trial, move to dismiss the case on speedy trial grounds. The new trial was not a continuation of the first trial. It was a trial de novo. *United States v. Flint,* 1 M.J. 428 (C.M.A.1976). To avail himself of perceived violations of *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), he was required to raise the issue anew. This Court has held that notwithstanding a plea of guilty the accused is entitled to review of a ruling denying his motion to dismiss the charges from an alleged deprivation of his right to a speedy trial. *United States v. Dusenberry,* 23 U.S. C.M.A. 287, 49 C.M.R. 536 (1975); *United States v. Johnson,* 20 U.S.C.M.A. 592, 44 C.M.R. 22 (1971); *United States v. Hamil,* 15 U.S.C.M.A. 110, 35 C.M.R. 82 (1964). But the accused must assert the right at his trial; otherwise there is nothing to review on appeal.

FLETCHER, Chief Judge (concurring in the result):

Speedy trial is never a matter of mere mathematics, whether the total falls short of or exceeds an arbitrary magic figure.

I find that there is nothing disclosed in the record as to a statutory prerequisite which shows a lack of diligence on the part of the Government to bring this matter to trial.