BARR, Judge:
Appellant, contrary to pleas of not guilty entered in his behalf by the military judge, was convicted at a general court-martial, by officer members sitting as the court, in a trial in absentia, on a charge of distribution of one tablet of lysergic acid diethylamide (LSD), in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The sentence extended to a dishonorable discharge, confinement at hard labor for five years, and forfeiture of total pay and allowances. The convening authority commuted the dishonorable discharge to a bad conduct discharge and disapproved all confinement in excess of two years.
As the primordial issue raised at trial, now the subject of an assignment of error on review before this Court, questions whether appellant was denied his right to a speedy trial, we set forth the chronology of the pretrial processing.
4, 6 November 1982[1] Appellant allegedly commits offenses in violation of UCMJ.
22 December 1982 Appellant placed in restriction onboard USS INDEPENDENCE.
24 December 1982 Appellant required by Leading Chief Petty Officer to make hourly musters.
4 January 1983 Article 32, UCMJ, investigation ordered; Investigating Officer appointed.
6 January 1983 Appellant placed in pretrial confinement.
10 January 1983[2] Charges preferred. 3 February 1983 Demand for speedy trial submitted by detailed defense counsel.
10 February 1983 New Investigating Officer appointed. Article 32, UCMJ, investigation conducted and report submitted to appointing authority, Commanding Officer, USS INDEPENDENCE.
18 February 1983 Article 32, UCMJ, investigation report submitted to Officer Exercising General Court-Martial Jurisdiction, recommending trial by general court-martial.
1 March 1983 Charges referred to general court-martial by Commander, Naval Base, Norfolk, Virginia.
10 March 1983 Charges received at Naval Legal Service Office, Norfolk, Virginia.
17 March 1983 Trial counsel and detailed defense counsel agree on trial date of 6 April 1983.
18 March 1983 Appellant retains services of civilian attorney.
*417 30 March 1983 Detailed defense counsel gives notice to military judge that the defense will submit a motion to dismiss to the court, asserts that the defense will not comply with local court rules requiring service of such motions on opposing counsel four days in advance of trial because appellant would be prejudiced, and asks military judge to hold this revelation in confidence.
6 April 1983 Appellant served with charge. Initial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session conducted at which appellant exercises his statutory right to five-day period granted by Article 35, UCMJ, 10 U.S.C. § 835.
8 April 1983 Appellant released from pretrial confinement. Detailed defense counsel notifies military judge that the motion to dismiss on speedy trial grounds, filed with the court, would not be served on trial counsel until 11 April — one day before the scheduled trial date.
12 April 1983 Article 39(a), UCMJ, session in which appellant is arraigned, speedy trial motion is litigated and denied, defense requests a continuance to submit an extraordinary writ, in appeal from the ruling of the military judge, to the Court of Military Appeals, and defense counsel assert that they are not prepared to proceed to trial beyond litigation of the speedy trial motion.
Subsequent events in the trial of this case, resulting in the announcement of findings and sentence, are not material to any issue now on review and, therefore, need not be explored.
At the initial level of review in this case by the convening authority, the staff judge advocate recommended in his review that the charge be dismissed on the ground that the military judge erred in denying appellant’s motion to dismiss for denial of speedy trial. The convening authority, disagreeing with this advice, approved the findings and took the above-described clemency action on the sentence.
Before this Court, appellant initially raised as his sole assignment of error the issue of speedy trial. During oral argument on 26 March 1984, this Court advanced the observation that a statement by the convening authority of his reasons for disagreeing with his staff judge advocate did not appear of record. See Paragraphs 85c and 91a, Manual for Courts-Martial, 1969 (Rev.) (MCM). As this omission would affect the ripeness of the case for our review, we directed that the statement of the convening authority, if made, be obtained and attached to the record of trial.
On 2 April 1984, Appellate Government Counsel filed with the Court a memorandum issued on 14 September 1983 by the convening authority to his staff judge advocate in which he recites, as his reason for disagreement with the advice of the judge advocate, that, since the defense was prepared to go to trial on 6 April, their decision to insist upon the Article 35, UCMJ, statutory period was solely for the purpose of triggering the automatic 90-day dismissal rule of United States v. Burton, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).
Subsequent to 2 April 1984, appellate defense counsel, civilian and military jointly, filed a second assignment of error claiming that the convening authority improperly approved the findings. The thrust of the assertion is two-fold: (1) that, as a factual matter, the convening authority erred in concluding that appellant’s reliance upon his right under Article 35, UCMJ, triggered the Burton rule, in that 6 April 1983 was the 91st day of continuous pretrial confinement; and, (2) that the convening authority failed to comply with Paragraphs 85c and 91a, MCM, as interpreted in United States v. Keller, 1 M.J. 159 (C.M.A.1975), and United States v. Dixson, 9 M.J. 72 (C.M.A.1980), in that his reasons for disagreeing with his staff judge advocate were not transmitted to the Judge Advocate General.
We turn now to consideration of the issues raised by the appellant.
I
THE CONVENING AUTHORITY IMPROPERLY APPROVED THE FINDINGS OF THE COURT.
*418 There are two sub-issues generated by this general statement of error, the first of which is also relevant to the speedy trial issue.
SUB-ISSUE A: HOW IS THE PERIOD OF PRETRIAL CONFINEMENT COMPUTED?
The dates of concern solely for this sub-issue cover the period from 6 January 1983, the date appellant was placed into pretrial confinement, until 6 April 1983, the date of the initial Article 39(a), UCMJ, session. For purposes of determining whether the 90-day presumption of Burton would apply in this case, were no other facts or factors involved, we conclude that the period in question constitutes 90 days of pretrial confinement. The general rule, adopted in United States v. Manolo, 1 M.J. 452 (C.M.A.1976), is that “the day of the event is to be excluded while the last day of the period is to be included.” Thus, the date on which an accused is placed in pretrial confinement, 6 January 1983 in this case, does not count; the date of trial, if the accused remains in confinement to that day, does count. Therefore, the 6th of April is included — as day 90. Though this method of computation was applied in Manalo in determining the period of post-trial incarceration for purposes of determining a denial of speedy review under the then extant rule of Dunlap,[3] its application to the pretrial confinement issue has been approved by Judge Cook, in his concurring opinion in United States v. Cole, 3 M.J. 220, 228-29 (C.M.A.1977), and was in fact the method of computation utilized by the Court of Military Appeals in deciding both United States v. Driver, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974) and United States v. Reitz, 22 U.S.C.M.A. 584, 48 C.M.R. 178 (1974) — both involving pretrial confinement issues.
SUB-ISSUE B: WHETHER FAILURE TO FOLLOW THE PROCEDURE ESTABLISHED BY PARAGRAPH 85c, MCM, 1969 (REV.), IS A PROPER GROUND FOR DISMISSAL OF THE CHARGE.
Paragraph 85c, as interpreted in Keller, supra, addresses two “separate and distinct procedures” — a “pre-action advice” procedure and a “justification” provision. The first, permitting a convening authority to seek “additional advice from the Judge Advocate General when a disagreement with his staff judge advocate occurs prior to taking action in the case,” is discretionary with the convening authority. The second procedure, whereby the convening authority must justify, in writing, any action taken by him which is at variance with the advice of his staff judge advocate, is mandatory. In the instant case, therefore, the convening authority could have, but was not required to, seek the advice of the Judge Advocate General before taking his action. He was required, however, to transmit to the Judge Advocate General his justification, in writing, for not following the advice of his staff judge advocate. The method for transmittal set forth in Paragraphs 85c and 91a, MCM, is straightforward. The letter of justification will be attached to the record of trial, which, for eases required by Article 66, UCMJ, to be reviewed by this Court, is always transmitted to the Judge Advocate General. The purpose of the Manual provisions is not to have the Judge Advocate General independently weigh and evaluate the efficacy and legality of the justification. Rather, it is to have the written justification made part of the record of trial for consideration by this Court in the course of appellate review. Notwithstanding the circuitous route which the letter of 14 September 1983 took prior to its attachment to the record of trial, we find that the substantive intent of the Manual mandate is now met. Even were a violation of the cited Manual provisions found to exist, the remedy is to compel compliance — not to dismiss the charge.
A related sub-issue — the responsibility for delay occasioned by an accused’s assertion of his right under Article 35, UCMJ— is so factually intermixed with, and its resolution so vital to the legal determination *419 of, the speedy trial issue, that we shall treat it in the consideration of that claim.
II
WAS THE APPELLANT DENIED HIS RIGHT TO A SPEEDY TRIAL?
The right of a military accused to a speedy trial is governed statutorily by Article 10, UCMJ, 10 U.S.C. § 810, which has been interpreted as being a reiteration of the speedy trial guarantee of the Sixth Amendment, United States Constitution. United States v. Hounshell, 7 U.S.C.M.A. 3. 21 C.M.R. 129 (1956). It has also been assumed that Article 10 is more rigorous than the constitutional standard. United States v. Burton, supra. This assumption is itself predicated on the underlying assumption that “the Uniform Code demands a more prompt performance by the Government in bringing the accused to trial.” United States v. Marshall, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). Notwithstanding the tiered assumption interpretation of Article 10, that codal provision has also been declared to be “in one fashion ... more restrictive in its application” than the constitutional guarantee. This restriction, and the manner in which Article 10 is distinguishable from the constitutional right, is that Article 10 applies, by its very language, only where a military accused is placed in either “arrest or confinement.” United States v. Nelson, 5 M.J. 189 (C.M. A.1978).
Under the traditional military jurisprudence — the “common law of the military” prior to 1949 — the authorized forms of restraint which could be legally imposed prior to trial were limited to arrest and confinement. These terms, though not identical, had few distinctions. Arrest was commonly termed “confinement to barracks, quarters, or tent,” and was utilized, normally in the case of officers, as a moral alternative to the physical restraint of confinement. The person so arrested could not leave the quarters designated as the locus of restraint. A guard was not normally required to be placed over the quarters unless the arrestee had attempted to breach the restraint imposed, or had been charged with an “exceptionally heinous crime.” The “honor” of the arrested member was considered the security against escape from the confinement of arrest.[4] “Confinement,” in its other form, meant placement within a stockade or brig. It was normally applied to enlisted personnel. In the military vernacular, as well as usage, of the time, both forms of restraint were considered to be confinement — the only distinction being the locus of the incarceration and the status of the member upon which each form of restraint was imposed. A member held under either form — arrest by confinement to quarters or confinement to a stockade — was prohibited from performing normal duties, exercising command or leadership responsibilities, and participating in military or official functions.[5] The practice within the naval service was similar.[6]
These distinctions and similarities were retained in the Manual for Courts-Martial, U.S. Army, 1949, as well as in the naval law, and adopted — both as legal concepts and as legal words of art — in the drafting of Articles 9, 10 and 33, UCMJ, 10 U.S.C. §§ 809, 810, 833.[7] The 1949 Army Manual did, however, introduce a new concept of restraint, not provided for by the Articles of War, denominated “restriction.” The definition of, and limitations upon, that sta *420 tus were retained in the promulgation of the Manual for Courts-Martial, United States, 1951,[8] but the name of the status was altered to that of “restrictipn in lieu of arrest.”[9] Then — under the 1949 Army Manual — as now, the status of restriction was a moral restraint which did not prohibit the performance of military duties or participation in military activities. It also differs from “arrest” by “confinement to quarters” — the term now defined by Article 9(a), UCMJ — in that the liberty limits of restriction in lieu of arrest are not so circumscribed.
In the discussion of the speedy trial defense in Paragraph 215e, MCM, it is declared that the right guaranteed by Article 10, UCMJ, is triggered by placing a military accused “under restraint such as restriction, arrest, or confinement or after charges are preferred.” Any of these actions mark the beginning date from which the Government will be held accountable for any delay in bringing the accused to trial. However, neither the imposition of the restraint of restriction nor the date of preferral of charges is a relevant factor, at least if the specific language of Article 10 is applied, in determining whether a violation of that Article has occurred. As stated above, Article 10 applies only to the traditional restraints of arrest and confinement. The status of restriction and its duration — where the conditions thereof, as imposed by proper authority, do not exceed the statutory limitations set forth in Paragraph 206, MCM, — and delay after preferral of charges, when raised as grounds in a claimed denial of speedy trial, are but separate factors to be considered under the Sixth Amendment constitutional test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 201 (1972).
It is to be noted that neither Congress, in enacting Article 10, UCMJ, nor the President, in promulgating Paragraph 215e, MCM, established a rigid time limit for bringing a military accused to trial — regardless of the triggering device involved —which, if transgressed, called for automatic dismissal of the underlying charges. In fact, such a suggestion was specifically rejected.[10] Such was the law until United States v. Burton, supra, effected a marked departure from this history.
Burton engrafted onto Article 10, UCMJ, a new rule, judicially created and consisting of two prongs. The first prong carved the restraint of confinement out of Article 10 for special judicial protection. Article 10 would henceforth be presumed to be violated when continuous pretrial confinement of a military accused exceeded 90 days[11] without being brought to trial. To overcome this presumption, the Government would now shoulder the “heavy burden” of proving diligence. Thus, on and after the 91st day of continuous pretrial confinement, the focus was to be shifted away from the balancing test of Barker v. Wingo and the statutory requirement that the Government proceed with “reasonable dispatch,”[12] and to a scrutiny primarily of the Government’s conduct, that is, “a close examination of the Government’s diligence.” United States v. Marshall, supra. The one caveat to the application of the 90-day rule was that any portion of the confinement which could be classified as a defense request for a continuance was not to be accountable against the Government in determining whether the presumption would be applied.
The second prong of Burton was to be applied to cases where continuous pretrial confinement did not exceed 90 days and where the defense requested, during the period of incarceration, a speedy disposition of the charges. This prong requires that *421 an accused be confined in order for it to be invoked. Where a speedy disposition request is entered, “the Government must respond to the request and either proceed immediately or show adequate cause for any further delay. A failure to respond to a request for a prompt trial or to order such a trial may justify extraordinary relief.” While we may ponder whether a distinction was intended to obtain between the phrases “proceed immediately” and “order such a trial,” as a matter of practice this prong has been interpreted to require the Government to proceed without delay— “forthwith” — to accomplish those steps necessary to bring an accused to trial. This is in keeping with the drafters’ definition of the term “immediate” within Article 10, the stated genesis for the holding in Burton.[13]
While the rules of Burton specifically apply only to confinement, there exists no logical reason why they would not also apply to the restraint of arrest, inasmuch as it was the right granted by Article 10— which applies both, and only, to arrest and confinement — which was the stated subject of judicial protection. United States v. Powell, 2 M.J. 6 (C.M.A.1976), as interpreted in United States v. Nelson, supra, seems to suggest this to be the case.[14]
Though the decisions in explanation and amplification of Burton are multitudinous, only a few seminal cases are crucial to the disposition of the instant case.
United States v. Schilf, 1 M.J. 251 (C.M.A.1976), has been repeatedly cited for the proposition that restraint short of confinement — restriction and the hybrid form of correctional custody in that case— can be considered as tantamount to confinement for purposes of computing the 90-day prong of Burton where the conditions of that restraint are exceptionally severe. Due to the limited scope of Article 10, this equating of the lesser statutory forms of restraint to that of confinement was necessary in order to apply that Article — and its decisional derivatives — to the facts of that case. The same conclusion can be reached where the conditions imposed by the lesser forms of restraint factually equate with the statutory definition of arrest. In such a circumstance, the restraint would be denominated as tantamount to arrest, and Article 10 would apply. United States v. Williams, 16 U.S.C.M.A. 589, 37 C.M.R. 209 (1967).[15] See also United States v. Powell, supra, and United States v. Nelson, supra. The bottom line is that the “label” placed upon the restraint is not controlling. The conditions of that restraint, and their identity with the conditions of arrest or confinement, are the touchstones which determine the applicability of Article 10 to given facts.
United States v. Reitz, supra, holds that mere acquiescence by the defense in a trial date already set by the Government is not to be construed as a defense request for a continuance under the 90-day prong of Burton. The corollary rule should, therefore, be that concurrence by the defense in a trial date for the convenience and benefit of the defense — for example, for the purpose of supposedly gaining a tactical advantage — can be considered as a defense requested delay. This latter proposition is, of course, subject to the qualification that if it is shown “that the prosecution could not have proceeded any earlier at any rate ... (then) the defense-requested ‘delay’ did not in fact delay the proceedings *422 at all and the responsibility for the pertinent time period remains where it started: on the shoulders of the Government.” United States v. Cole, supra, at 225.
Finally, the Court of Military Appeals has laid down a two-step “exercise” to be conducted in determining responsibility for a particular period of delay: “(1) Look at the real cause of the request i.e., did the Government do anything to affirmatively necessitate the request, see United States v. Beach, 1 M.J. 118 (C.M.A.1975) and (2) Look at the result of the request (did it really ‘delay’ the proceedings in any way.)” United States v. Cole, supra, 225, n. 5. A third element to the exercise should be added: “(L)ook behind which party physically requested the delay to ascertain to whose benefit the delay in fact accrued.” Ibid, at 225.
SUB-ISSUE A: SHOULD THE PRETRIAL RESTRICTION SERVED BY APPELLANT FROM 22 DECEMBER 1982 TO 6 JANUARY 1983, OR PARTS THEREOF, HAVE BEEN CONSIDERED AS “TANTAMOUNT TO CONFINEMENT” IN COMPUTING THE PERIOD OF ACCOUNTABILITY OF THE GOVERNMENT FOR PURPOSES OF DETERMINING WHETHER THE FIRST PRONG OF BURTON WAS APPLICABLE.
Appellant’s command ordered him into pretrial restriction on 22 December 1982. The only limitations upon his liberty were that he remain on board the ship and muster four times per day. No other requirements were placed upon him which served to distinguish him from any other enlisted member of the ship’s complement. •He was permitted to perform his normal duties. The order was fully in consonance with the definition of restriction as a “moral” restraint. Furthermore, the conditions prescribed therein did not equate with the statutory definition of either arrest or confinement. Had these conditions of restriction remained unaltered through the 6th of January 1983, no contention could legitimately be made that the restraint so imposed was tantamount to confinement. On 24 December, the conditions of restraint were changed. Master Chief “S”, faced with information that appellant was not mustering for restriction as required and was reporting for work drunk, “added-to” the command order of restriction by requiring appellant to muster hourly. The testimony of Master Chief “S” leaves no question but that this decision was made on his own initiative — not at command direction. There is no evidence to suggest that the command was aware of this altered status. We, therefore, agree with the conclusion reached by the military judge that the la-belling of this restraint should be measured by the conditions imposed by the command — not by an interloper, however well-intentioned his purposes. Furthermore, even were we to impute the actions of Master Chief “S” to the command, such that the modification to the restriction order would be considered to be command directed, we would find that the alteration to the muster requirement was occasioned solely by the evidenced misconduct of appellant in his refusal to comply with the original terms of the restriction. We would also find that the modification was a reasonable command action taken in full compliance with the stepped-process required by United States v. Heard, 3 M.J. 14 (C.M.A.1977). Under these circumstances, we do not find any of the period of restriction tantamount to confinement for purposes of computing the 90-day prong of Burton.
SUB-ISSUE B: IS THE GOVERNMENT ACCOUNTABLE FOR THE DELAY OCCASIONED BY APPELLANT’S ASSERTION OF HIS ARTICLE 35, UCMJ, RIGHT.
Article 35, UCMJ, provides in pertinent part as follows:
... In time of peace no person may, against his objection, be brought to trial or be required to participate by himself or counsel in a session called by the military judge under section 839(a) of this title (article 39(a)), in a general court-martial case within a period of five days after the service of charges upon him ...
*423 Two cases , decided by the United States Army Court of Military Review have concluded that the Article 35, UCMJ, right is “so fundamental to defense preparation and a fair trial” that the Government should be accountable for any delay occasioned by assertion of that right. United States v. Murrell, 50 C.M.R. 793 (A.C.M.R. 1975); United States v. Parker, 48 C.M.R. 241 (A.C.M.R.1973). For the same reason cited in Murrell, we disagree with the conclusion as to accountability.
The purpose of enacting Article 35, UCMJ, is unequivocally clear from its legislative history:
Mr. Brooks. The matter of the 5-day period was brought into question, Mr. Larkin. Do you see any necessity for a change there?
Mr. Larkin. I do not think so, Mr. Chairman. It is a protection against a too speedy trial. That is the purpose of it.[16]
The fear which Article 35 was drafted to assuage was forcing a military accused to go to trial with such haste that he would not be able to adequately prepare his defense and be ready to answer to the charges. The contention that one has been denied a speedy trial is the antithesis of a claim grounded upon Article 35. We note that the Manual provision expounding upon Article 35 is found not within Paragraph 215e, discussing speedy trial, but rather in Paragraph 58c, discussing grounds for a continuance. The Article 35 right — and hence a continuance requested for the purpose of exercising that right — can be asserted only by the defense. If the idea behind the proscription of Article 35 is to enable the defense to prepare for trial, then its exercise for a purpose other than that for which it was enacted must be viewed as a continuance requested for the benefit of the defense. The qualification pronounced in Cole, referred to above, has no relevance if the Government, but for timely service of charges, is then prepared to go forward with the trial. On the facts presented in this case, it appears, and we so conclude, that the Government was ready and eager to proceed to trial on 6 April 1983. That date was set weeks earlier. The civilian counsel unhesitantly stated that he was prepared to go to trial within “a day or two” after being retained by appellant. As the 6th of April was only the 90th day of continuous pretrial confinement, it was obviously necessary, in the tactical mind of the defense, to obtain the “benefit” of at least one more day of confinement. The exercise of the Article 35, UCMJ, right was the means chosen to accomplish this purpose.
It is surely the epitome of incongruity to demand a speedy trial, which implicitly carries with it the assertion that one is prepared and eager to proceed to trial, and thereafter assert a right — for no other reason than to orchestrate a Burton 90-day issue — intended to prohibit a wholly contrary result — a too speedy trial. It also bespeaks a need for a reexamination of our decisional law when — as happened in this case — the Government is trying to get the accused to trial but the accused and his counsel, while with practiced outrage demanding a speedy trial, designedly take those steps guaranteed to prohibit such a trial. The evidence of record is clear on this point.
We, therefore, hold that where an accused demands a speedy trial and thereafter elects to exercise his right under Article 35, UCMJ, the statutory period of delay required by the codal provision, together with any reasonable additional period necessitated to reschedule the trial, is a defense generated request for a continuance for the benefit of the defense and is not chargeable against the Government. When we apply the test set forth in Cole, together with the third element of that exercise which we believe is also suggested by that case, we reach the same conclusion. This holding is, furthermore, supported by the decision in United States v. Ward, 1 M.J. 21 (C.M.A.1975), where, in referring to the Article 35 right, the Court commented: “Of course, the accused has the right to refuse to waive the waiting period, but the *424 resulting period of delay is a factor for consideration in assessing the reasonableness of the time required to bring the accused to trial on this charge.” Ward, 25 n. 6.
Applying this holding to the facts of this case, the Government accountability for appellant’s pretrial confinement for purposes of speedy trial ceased on 6 April when appellant asserted his right under Article 35, UCMJ — notwithstanding that appellant was retained in confinement until 8 April. Though the accountability of the Government under the second prong of Burton, the constitutional test, or the traditional codal law of speedy trial would have commenced anew on 12 April, the date of the next session of trial, the defense specifically requested a continuance on that date, asserting, in the words of the civilian attorney, “If the court is not inclined at this point to grant a stay in the proceedings, the defense would also request a continuance at that point to do further research on the case. The defense would submit at this point that we are not prepared to proceed with the trial further. There might be some other motions that we might be missing here.” [17] The Government’s period of accountability ended on 6 April 1983 — the 90th day of continuance pretrial confinement. The first prong of Burton is not applicable in this case.
SUB-ISSUE C: WAS THE GOVERNMENT ACCOUNTABLE FOR THE ENTIRE PERIOD OF CONFINEMENT FROM 6 JANUARY THROUGH 6 APRIL 1983?
It is necessary to amplify upon the facts contained within the chronology. On 4 January 1983, a charge sheet was prepared, the charge preferred, and appellant was advised of its nature, which included the offenses upon which he was ultimately tried. An Article 32, UCMJ, investigation was ordered that same date. On 10 January, the original charge sheet was withdrawn and a substituted charge sheet preferred, containing only those offenses upon which the trial was conducted. On 3 February, then on notice that an Article 32 had been ordered, the detailed defense counsel issued a demand for speedy trial upon the officer who appointed the investigation, but who had no power to convene a general court-martial. Seven days later the Article 32 was conducted, completed, and a report of its proceedings published by the investigating officer. Following the review and recommendation of the appropriate officials, the charge was referred to a general court-martial on 1 March.
Appellant retained the services of the civilian attorney, Mr. McCormack, on 18 March. The detailed defense counsel, however, was aware on 17 March that Mr. McCormack might be involved in the case. On the latter date, a rather interesting conversation took place between trial counsel and the detailed defense counsel concerning a proposed trial date. At trial, Mr. McCormack baldly accused the trial counsel of presenting to the court, in her written response to the defense motion on speedy trial, “palpably false” allegations. The military judge, properly concerned over the impact which such an accusation conveyed — fraud perpetrated upon the court — explored the issue at length on the record. We will not detail the exchanges which ensued. Suffice it to state that, based upon the direct admissions of the detailed defense counsel, the verity of the matters asserted by the trial counsel was proven. In the exercise of our fact-finding powers,[18] we conclude that the following facts are proven as resulting from that conversation:
(1) On 17 March 1983, the trial counsel approached the detailed defense counsel to confer on a possible trial date.
(2) The detailed defense counsel stated that because appellant had recently re *425 tained a civilian attorney, trial before 6 April would not be possible.
(3) The trial counsel suggested that an Article 39(a), UCMJ, session be scheduled prior to 6 April in order to arraign appellant and release him from confinement.
(4) The detailed defense counsel indicated his concern that appellant might possibly become involved in additional misconduct if returned to his command and stated, “The Brig was the best place for him.”
(5) Trial counsel, believing the 6th of April to be the 89th day of pretrial confinement, expressed discomfort with docketing the case for trial that late.
(6) In response to a question by the trial counsel as to whether there existed any “hidden confinement” in the case, the detailed defense counsel stated, “No.”
(7) As of 17 March, the detailed defense counsel had already planned to raise a motion on the ground of a denial of speedy trial.
Based upon the conversation which developed these facts, the Government argued at trial, and now contends before this Court, that the conduct of the defense must be viewed as a defense request for a continuance. Appellant’s counsel both at trial and on review, contend that these facts reveal nothing more than mere defense acquiescence in a trial date set by the Government. The civilian attorney, who has continued his representation of appellant before this Court, argued at trial that the detailed defense counsel could not, on 17 March, speak for or bind him (civilian attorney), as the latter was the lead counsel on the case.
On 17 March, the civilian counsel had not been retained by appellant. This conclusion is proven by the statement of that counsel at trial that he received a retainer fee on 18 March. On 17 March, the civilian counsel had no right, indeed it would have been ethically improper for him, to interject himself into any negotiations concerning a trial date. The actions of the detailed defense counsel on 17 March, as the only counsel representing appellant at that time, were binding on the defense, which included the civilian attorney, until such time as some step was taken by the civilian attorney to convey to the Government that he would not be so bound. The civilian attorney admitted at trial that he, in fact, assented to the trial date agreed upon on 17 March — and joined in the efforts to develop a speedy trial issue. We find it anomalous, and nothing short of an affrontery to logic, for the civilian counsel to argue that the conduct of the detailed defense counsel on 17 March did not bind him or the appellant, but, in the same breath, to adopt the detailed counsel’s demand for speedy trial of 3 February as the demand of the defense team.
The law seems clear that mere defense acquiescence in the setting of a trial date is not the equivalent of a defense request for a continuance which would relieve the Government of its accountability under any of the rules governing speedy trial. United States v. Driver, supra; United States v. Wolzok, 1 M.J. 125 (C.M. A.1975); United States v. Reitz, supra. A mere statement of the law does not, however, dispose of the issue. The question remains as to what the term “acquiescence” means. Its definition, in normal usage, means to comply tacitly or passively; to accept as inevitable; to view submission to the demand as the only available recourse. If we apply this definition to the above statement of law, we can state, as a corollary of that rule of law, that while the defense need do nothing to speed a case along to trial, it must do nothing to impede or hamper the case processing. If it does, any delays occasioned by such self-created impediments must be charged to the defense. We find the conduct of the detailed defense counsel on 17 March to be deceptive and marked by the highest form of chicanery. The sole object was to mislead the Government into believing that the continued confinement of appellant was not only with the approval of the defense but also would not be challenged at trial. The trial counsel alertly tried to avoid prejudice *426 to appellant by offering an early arraignment and seeking confirmation that no “hidden confinement” existed. The defense went far beyond merely rejecting these overtures — it actively resisted the efforts of the Government to avoid a speedy trial problem. The detailed defense counsel, by his deception of the Government, tried to perpetuate, and then take advantage of, a speedy trial issue of his own making and design. In no sense of the word can this be termed as the passive and inevitable acceptance of acquiescence. If anything, this was Government acquiescence to the representation of the defense.
In the context of the issue regarding the treatment of restriction, the defense at trial urged the court to consider the principle in Schilf which held the restriction, under the circumstances of that case, to be tantamount to confinement. We have rejected this application of Schilf to the facts involving restriction in this case. We do, however, find that case illuminating on the issue of accountability for the delay after 17 March. Perhaps the primordial reason for the result in Schilf was the pervasive evidence of “trickery” by the chief of military justice as it affected that accused’s status in confinement. That same type of evidence is abundantly extant in this case— perpetrated by the defense. Borrowing from the language in Schilf, we find that “(p)articularly damnable are the unconscionably delusive tactics” of the defense. The conduct of the defense on 17 March, which continued both unabated and unencumbered by the restraints of honesty even into the proceedings conducted on 6 April, was not mere acquiescence; it was a specific defense request that the case be continued until 6 April in order for the civilian counsel to prepare for the case and that appellant be retained in confinement until that date. It was a specific request for a continuance, but clothed in the language of artifice, made to manipulate a speedy trial issue.[19] We, therefore, agree with the determination of the military judge that the delay from 17 March until 6 April and, as we have previously stated, all delay subsequent to 6 April, is accountable to the defense.[20]
SUB-ISSUE D: WHAT IS THE IMPORT OF THE DEMAND OF THE DETAILED DEFENSE COUNSEL OF 3 FEBRUARY 1983 CALLING FOR A SPEEDY TRIAL?
Burton requires that the Government must respond to such a request and either proceed immediately or show cause for delay. The Government did in fact respond. It convened the Article 32 investigation only 7 days after the request. The statutory preliminaries to referral, and the actual referral, to a general court-martial were accomplished with promptitude. In fact, every action of the Government through 17 March, including the efforts of the trial counsel to avoid a speedy trial problem, was taken with expedition and a concern for speedy, yet orderly, processing of the case. This is all that the second prong of Burton requires.
SUB-ISSUE E: WAS APPELLANT DENIED A SPEEDY TRIAL UNDER THE UCMJ OR THE CONSTITUTIONAL STANDARD?
The answer to this issue is an unequivocal no. The Barker v. Wingo test weighs decidedly in favor of the Government. As often iterated when assessing a claim of denial of speedy trial in the traditional — non -Burton —sense, “the touchstone for measurement of compliance with the UCMJ is not constant motion, but reasonable diligence in bringing the charges to trial.” United States v. Tibbs, 15 U.S.C. *427 M.A. 350, 35 C.M.R. 322 (1965). “Brief periods of inactivity in an otherwise active prosecution cannot be regarded as oppressive or unreasonable.” United States v. Williams, 12 U.S.C.M.A. 81, 30 C.M.R. 81 (1961). The Government’s accountability runs from 6 January, the date appellant was placed in pretrial confinement, until 17 March, the date of the defense request for a continuance. Not only was the conduct of the Government during this period reasonably diligent, but we can discern no periods of inactivity — not even brief ones— in its prosecution of this case during that accountable period.
Appellant was not denied his right to a speedy trial under either prong of United States v. Burton, supra, nor under the UCMJ, nor under the Constitution. The assignment of error is rejected.
The “tactical” machinations of the defense in this case give us grave cause for concern. We view their conduct, individually and collectively, as an attempt to orchestrate a speedy trial issue. Far from desiring a speedy resolution of the charges, the defense took every step conceivable to protract the proceedings and, by trickery and deception, have the delays thus occasioned charged to the Government. The demand of 3 February was a sham, an incantation made to create an issue — not to avoid an issue, that of denial of speedy trial. The detailed defense counsel, as of 3 February, knew an Article 32 investigation had been ordered. He had yet to gain the discovery benefits which inure in such a proceeding. He was not, in any respect, prepared to go to trial on that date. As stated above, a demand for a speedy trial implicitly asserts that the counsel issuing the demand is then prepared for trial. Even if the record contained no evidence on the matter, we would find it almost implausible to believe that the civilian attorney was prepared to go to trial — and that means a trial on the merits of the case, not just litigation of a “favored” motion — on 20 March, as he asserted. As of that date, he had talked with the detailed counsel over the telephone one time and with his client on one or two occasions, at most. He certainly did not interview witnesses, examine the evidence, or prepare for a possible sentencing phase of trial. We can dismiss any wonderings on this point, as the unqualified admission of the defense on 12 April that they were not prepared to proceed further with the trial beyond the litigation of the speedy trial motion renders the fact self-evident. We have no hesitation in concluding that had the Government set a trial date for 2 March, the day after referral, or 20 March, when the civilian attorney was “prepared to go to trial,” the defense would have pursued the course they chose weeks later — request a continuance because they were not prepared.
This case is replete with evidence of gamesmanship of the worst sort. The defense counsel, feeling confident in their belief that they both could, and had, “setup” the Government well enough to win the speedy trial issue, convinced appellant to stay in the brig — and took steps, both of commission and omission, to ensure that he stayed there. The demand of 3 February, the chicanery of 17 March, and the machinations of 6 and 12 April were made and practiced, not, in the words of Burton, to “alertly avoid what would otherwise be a waiver of the speedy trial issue by urging prompt trial,” but for the sole purpose of creating and perpetuating, by design, such an issue. If this be not the case, why did the defense try to keep appellant in the brig, even in the face of the urging of the trial counsel for early arraignment? Why did the detailed defense counsel intentionally mislead the trial counsel on the issue of “hidden confinement?” Why did the defense not reassert its request for a speedy trial to the convening authority after referral on 1 March? Why did the defense not request an advancement in the trial date? Why did the defense not ask for an Article 39(a), UCMJ, session on or shortly after either 1 March or 20 March and request an advancement in the trial date of the military judge? Why did the defense knowingly, and attempt to secretly, avoid the local rules of court which required that motions be served upon opposing counsel four days *428 prior to trial? Why did the defense assert the Article 35, UCMJ, right when, by their own adamantine claim, they did not need the time for trial preparation?
The unfortunate answer to all these questions is explained by the philosophy of the defense counsel — a philosophy which permeated the speedy trial issue from the time of its creation in their minds through to its litigation. In the words of the civilian attorney, had the defense given notice of the motion to the Government at a time when it might have avoided a potential 90-day problem, “the Government would have just turned around and let him loose.” If the defense believed that appellant was confined improperly or for too long a period, they felt it “not the slightest bit” incumbent upon them to do anything to obtain his release. The statutory five-day period of Article 35 was not waived and notice of the motion was not given to the trial counsel because “it definitely would have prejudiced” the defense case. In short, the philosophy was for the defense to keep the accused confined long enough, in hopes of obtaining a dismissal of the charges. The defense attempted to convert the aegis of Article 10 into an “offensive tool.” We view such conduct, as witnessed in plentitude in this case, with the utmost disdain. These are the types of so-called “tactics” to be abjured.
Accordingly, the findings and sentence as approved on review below are affirmed.
Senior Judge GREGORY and Judge MITCHELL concur.

. Appellant was arraigned upon, and entered not guilty pleas to, allegations of possession and distribution of one tablet of LSD on 4 November 1982 and possession of 34 tablets of LSD on 6 November 1982 with intent to distribute same. He was found guilty only of the distribution of one tablet of LSD on 4 November.

. An earlier charge sheet, dated 4 January 1983, was withdrawn by the Commanding Officer, USS INDEPENDENCE and a subsequent charge sheet, upon which appellant was arraigned and tried, dated 10 January 1983, substituted. The 4 January charge sheet indicates that appellant was informed, on 4 January, of the nature of the charges upon which he was subsequently arraigned.

. Dunlap v. Convening Authority, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).

. We here are referring to the term "close” arrest, as distinguished from “open” arrest, or an arrest "at large.” In the latter status, granted by a commanding officer as a benefit to an accused rather than one to which an accused was entitled as a matter of right, the limits of arrest were extended beyond that of the "barracks, quarters, or tent.”

. For an expanded understanding of the similarities of, and distinctions between, "arrest" and "confinement,” see Winthrop, Military Law and Precedents, 110-125 (2d Ed.1920).

. Naval Courts and Boards, 1937, Section 343; Articles for the Government of the Navy, Article 44.

. Index and Legislative History, Uniform Code of Military Justice, HH 903, 905, 1005; HR 13 and 20; SR 10 and 17.

. Compare Paragraph 196, MCM, U.S. Army, 1949, with Paragraph 206, MCM, 1951.

. Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, at 36.

. Index and Legislative Basis, Manual for Courts-Martial, United States, 1951, at 36.

. United States v. Driver, supra, modified the “3 month” Burton Rule to 90 days.

. Paragraph 215e, MCM, 1969 (Rev.).

. Index and Legislative History, UCMJ, at 906.

. Though the facts set forth in Powell describing the conditions of restraint — revocation of pass privileges for a period of 110 days — do not support a finding that the restraint was the legal equivalent of arrest, Nelson, recognizing the statutory limitation of the application of Article 10 to only arrest and confinement, inferred that the Court in Powell “implicitly found that under the circumstances of that case, the Government had violated that provision by keeping the accused in pretrial arrest for 110 days. Such an inference is the only way to reconcile Powell with the Uniform Code, upon which the disposition of that case purports to rest."

. In my opinion, the facts revealed in Williams —restriction to a company area for 138 days— do not make out an Article 9(a), UCMJ, “arrest.” However, it is clear beyond cavil that the Court in Williams concluded otherwise.

. Index and Legislative History, UCMJ, HH 1012.

. After the military judge denied the motion to dismiss on the claim of a denial of speedy trial, the defense requested a stay in the proceedings in order to take an appeal, by extraordinary writ, of the military judge’s ruling to this Court or the Court of Military Appeals.

. Article 66, UCMJ, 10 U.S.C. § 866.

. When the defense request for trial no earlier than 6 April is placed in context with the manner in which they developed the speedy trial issue, the mystery surrounding the selection of that date disappears. The defense at trial contended that, in computing the duration of pretrial confinement, both the day an accused is placed into confinement and the day of trial are counted. Under their view of the law, which is erroneous, 6 April would have been the 91st day of continuous pretrial confinement, which carries with it the judicially created presumption of a denial of speedy trial.

. The military judge held the defense accountable from the 19th of March.